IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LESLIE ATKINSON,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )          1:22-cv-369
                                    )
WAYNE COATS, in his official        )
capacity as Sheriff of              )
Harnett County, North Carolina,     )
                                    )
          Defendant.                )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This case is before this court on remand following the Fourth Circuit's opinion in Atkinson v. Godfrey, 100 F.4th 498 (2024). In light of that opinion, this court directed the parties to file their respective positions on the issue of municipal liability. (Text Order 07/26/2024.) Both parties have responded. (Docs. 54, 55, 56.) Upon reconsidering this court's Memorandum Opinion and Order denying Defendants' Motion to Dismiss, (Doc. 45), this court will vacate its previous denial and will dismiss all claims as to Defendant Harnett County Sheriff Wayne Coats (hereinafter "Coats").

## I.   FACTUAL BACKGROUND

The facts of this case are more fully set forth in detail in this court's previous Memorandum Opinion and Order. (Mem. Op.

& Order ("MTD Order") (Doc. 45) at 2-4.)[1] Relevant facts will be discussed as pertinent to Plaintiff's claims against Coats.

In the course of an argument that arose during a disputed vehicle repossession, Carolina Repo, LLC (hereinafter "CR") contacted the Harnett County Sheriff's Office (hereinafter "HCSO") for assistance. (Compl. (Doc. 1) ¶ 73.) When Deputy Brent Godfrey (hereinafter "Godfrey") arrived, he saw Plaintiff in her vehicle "lifted into the air" by a tow bar. (Id. ¶ 95.) Godfrey then approached Plaintiff and ordered her to exit the vehicle. (Id. ¶ 102.) Plaintiff exited the vehicle, and CR completed the repossession. (Id. ¶ 103, 108.) Plaintiff explains that HCSO, and thus Coats, should be liable for her injuries by "act[ing] in concert" with CR to "accomplish the repossession." (Id. ¶ 106.) Plaintiff asserts that CR called HCSO because it knew that HCSO "has a policy of assisting secured parties with the self-help repossession of collateral." (Id. ¶ 82.)

## II. **PROCEDURAL HISTORY**

Coats and Godfrey moved to dismiss Plaintiff's claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss Defs. Brent Godfrey &

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Sheriff Wayne Coats ("Defs.' Mot.") (Doc. 18).) This court denied Defendants' motion, determining that Plaintiffs' claims against Godfrey in his individual capacity and Coats in his official capacity could not be decided as a matter of law based on the allegations of the complaint. (MTD Opinion (Doc. 45) at 14–15.) Defendants appealed this determination, (Defs.' Notice of Appeal (Doc. 46)), and the Fourth Circuit reversed this court's decision on qualified immunity, (Doc. 50), and issued its formal mandate ordering a dismissal of all claims against Godfrey, (Doc. 53).

In its opinion, the Fourth Circuit explained that Godfrey was entitled to qualified immunity because "neither the Supreme Court, our Court nor North Carolina's high court has provided fair warning that conduct like Godfrey's was unconstitutional." Atkinson, 100 F.4th at 508. Additionally, there was no consensus from "other courts of appeals that would have provided fair warning to a reasonable officer standing in Godfrey's shoes." Id.

Next, the Fourth Circuit "decline[d] to exercise jurisdiction" over Plaintiff's claims against Coats because the municipal liability claims were "not inextricably intertwined with [the] resolution of the qualified immunity issues." Id. at 509. Despite "the rules of pendent jurisdiction" counseling the

court into "staying our hand," the court noted that "it may be less likely that a municipality may be found liable when the constitutional terrain was as murky as that here." Id. Judge Wilkinson further articulated in a concurring opinion that "the whole idea of fair notice that lies at the heart of qualified immunity for individuals need not be wholly abandoned when policymakers are concerned." Id. at 510 (Wilkinson, J., concurring).

From the Fourth Circuit's opinion, this court identified that its decision as to Defendant Coats should be reconsidered. See White v. City of Greensboro, 586 F. Supp. 3d 466, 491 (M.D.N.C. 2022) (citing Sewell Plastics Inc. v. Coca-Cola Co., 912 F.2d 463, n.1 (4th Cir. 1990)). This court directed the parties to file their respective positions on the issue of municipal liability. (Text Order 07/26/2024.) As instructed, both parties filed statements and briefs as to how this case should proceed. (Pl.'s Position Statement ("Pl.'s Resp. to Text Order") (Doc. 54); Defs.' Br. in Supp. of Recons. ("Defs.' Resp. to Text Order 1") (Doc. 55); Defs.' Suppl. Br. in Supp. of Recons. ("Defs.' Resp. to Text Order 2") (Doc. 56).)

After considering the parties' arguments, the Fourth Circuit's opinion, and recently established Fourth Circuit precedent on municipal liability, this court vacates its denial

- 4 -

of Defendants' motion to dismiss Plaintiff's municipal liability claims, (MTD Order (Doc. 45)). This court accordingly grants Defendants' motion to dismiss, (Defs.' Mot. (Doc. 18)).

## III. **STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556–57).

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

In the context of municipal liability, the Fourth Circuit has explained that "[a]lthough prevailing on the merits of a <u>Monell</u> claim is difficult, simply alleging such a claim is, by definition, easier." <u>Owens v. Baltimore City State's Att'ys Off.</u>, 767 F.3d 379, 403 (4th Cir. 2014). This is because, under <u>Twombly</u> and <u>Iqbal</u>, "the recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." <u>Id.</u> (citing <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 570). However, a plaintiff fails to state a claim in this context when the plaintiff "offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." <u>Id.</u> (citing <u>Iqbal</u>, 556 U.S. at 678). "[M]erely stating the legal conclusion" that an officer has, for example, "final policymaking authority does not make it so." <u>Misjuns v. City of Lynchburg</u>, 139 F.4th 378, 385 (4th Cir. 2025).

## IV. <u>ANALYSIS</u>

Plaintiff argues that her "case against Coats remains unchanged" because the Fourth Circuit "declined to exercise jurisdiction over Coats's appeal" after establishing that "(1) his appeal was not inextricably intertwined with Godfrey's qualified immunity defense; (2) qualified immunity does not

- 6 -

apply to [Plaintiff's] claims against Coats in his official capacity; and (3) the Fourth Circuit did not reverse this Court's finding that [Plaintiff] adequately pleaded a violation of her constitutional rights." (Pl.'s Resp. to Text Order (Doc. 54) at 1–2.) Conversely, Defendants contend that "in light of the Fourth Circuit's holding, Plaintiff cannot allege or argue that the HCSO could have been on notice that any of its training, policies, or practices were deficient or needed to be changed." (Defs.' Resp. to Text Order 1 (Doc. 55) at 7–8.) This court finds that while the Fourth Circuit declined to address Plaintiff's municipal liability claims, the Fourth Circuit's conclusions on Plaintiff's qualified immunity claims inform this court's municipal liability analysis and support a dismissal of the claims against Coats. Additionally, the Fourth Circuit's recent opinion in Misjuns further supports this conclusion. 139 F.4th at 384–86.

In Monell v. Department of Social Services, the Supreme Court explained that a municipality "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). The Fourth

- 7 -

Circuit has explained that "Monell permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 532-33 (4th Cir. 2022) (quoting Monell, 436 U.S. at 690-91).

Recognizing that "not every deprivation of a constitutional right will lead to municipal liability," Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003), the Fourth Circuit applied Monell and its progeny and articulated that:

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Id. (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999). These four "methods" continue to guide the Fourth Circuit's framework on municipal liability. See Howard v. City of Durham, 68 F.4th 934, 952 (4th Cir. 2023); see also Misjuns, 139 F.4th at 384; Starbuck, 28 F.4th at 533.

Beyond recognizing instances of policies or customs, the Fourth Circuit has also established the appropriate causal standard for determining when an official is liable. Generally,

- 8 -

to state a claim for "Monell liability," a plaintiff "must show that the execution of a policy or custom of the municipality caused the violation." Misjuns, 139 F.4th at 384 (citing Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 195 (4th Cir. 1994).

But because the third theory contemplates a municipality's omissions instead of actions, the appropriate standard is "deliberate indifference." Est. of Jones v. City of Martinsburg, 961 F.3d 661, 672 (4th Cir. 2020), as amended (June 10, 2020) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Mindful that "[i]solated, unprecedented incidents" are "insufficient to create municipal liability," Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000), the Fourth Circuit explained that "any deficiency in training" must be due to a "conscious choice by a municipality." Est. of Jones, 961 F.3d at 672 (quoting Broderick, 225 F.3d at 456). In other words, the "strict Monell test asks for some level of notice" such that "a municipality either knew or should have known about the deficiency, so it could remedy that deficiency." Id.

Here, this court finds that Plaintiff has failed to state a claim for relief after considering both the Fourth Circuit's decision on Godfrey's qualified immunity, Atkinson, 100 F.4th at 508, and another recent decision on municipal liability. Misjuns, 138 F.4th at 384–87. This court is mindful of its

- 9 -

previous denial of Defendants' motion to dismiss and its
decision that "this court is not able to find, as a matter of
law at this stage of the proceedings, that the claim against
Coats is subject to dismissal" because "discovery may or may not
disclose facts upon which <u>Monell</u> liability may be established."
(MTD Opinion (Doc. 45) at 15.) However, the Fourth Circuit's
determination that Plaintiff's asserted constitutional right was
"too general to have clearly established that Godfrey's conduct
was unconstitutional at the time of repossession" clarifies the
third recognized claim based on omissions and failure to train.
<u>Atkinson</u>, 100 F.4th at 506. Furthermore, <u>Misjuns</u> clarifies and
confirms, as suggested by the court in <u>Atkinson</u>, 100 F.4th at
508, that Plaintiff has not plead facts adequate to support the
fourth theory of widespread practices. 139 F.4th at 386.
Finally, the first and second theories cannot be established by
Plaintiff's pleadings. Therefore, dismissal is appropriate.

A. **<u>Express Policy</u>**

Plaintiff argues that "[u]pon information and belief, HSCO
[sic] has a policy of assisting secured parties with the self-
help repossession of collateral." (Compl. (Doc. 1) ¶ 82.)
Additionally, Plaintiff alleges that "[a]s a policy maker for
HCSO, Coats created, promulgated, and maintained policies which
deprived [Plaintiff] of her Constitutional right to be protected

- 10 -

from unlawful seizures and from being deprived of property without due process." (Id. ¶ 188.) Conversely, Defendants contend that Plaintiff's "multiple boilerplate averments about HCSO" do not "point to any other actual incidents where HCSO became actively involved in a repossession or assisted in an unlawful repossession." (Defs.' Resp. to Text Order 1 (Doc. 55) at 5–6.)

This court finds that Plaintiff has failed to plead facts sufficient to plausibly infer that an express policy exists. Under this first recognized theory of municipal liability, Plaintiff "must point to an 'express policy,' that is, 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." Howard, 68 F.4th at 952 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986)). A "foundational principle of Monell liability" is that "municipalities are liable only for 'acts which the municipality has officially sanctioned or ordered.'" Id. at 954 (quoting Pembaur, 475 U.S. at 480). Thus, Plaintiff must not only plead facts sufficient to infer that an express policy existed and was consistently followed, but also "provide proof it was approved of" by the municipality. Id.

Here, Plaintiff has failed to create the plausible inference that an express policy existed. This court agrees with Defendants that "nearly all of" Plaintiff's averments are "[u]pon information and belief." (Defs.' Resp. to Text Order 1 (Doc. 55) at 5.) Such "conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC, 615 F. Supp. 3d 379, 384 (M.D.N.C. 2022) (quoting Harman v. Unisys Corp., 365 F. App'x 638, 640–41 (4th Cir. 2009) (unpublished, per curiam opinion)). Plaintiff "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." Id. at 385 (quoting Citizens United v. Schneiderman, 882 F.3d 374, 384 (2d Cir. 2018)).

Not all of Plaintiff's contentions are conclusions made "[u]pon information and belief." Plaintiff provides "facts supporting the existence of that policy," which include CR calling HCSO "because it understood HCSO maintained a policy of assisting with repossessions" and that "HCSO did not deny that such a policy existed when CR mentioned it." (Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") (Doc. 27) at 21.) These facts, taken as true, do not support that an unconstitutional policy exists, that the policy was sanctioned by the

- 12 -

municipality, or that the policy was consistently followed. "Assistance with repossessions" is very broad and supports only an inference that the assistance extends to lawful support and not unconstitutional conduct.

As explained by the Fourth Circuit in the context of municipal liability, non-conclusory facts at the motion to dismiss stage must "len[d] credence" to the argument that a municipality "'encouraged, or at least tolerated' an impermissible practice." Owens, 767 F.3d at 403–04 (quoting Haley v. City of Boston, 657 F.3d 39, 53 (1st Cir. 2014)). Plaintiff must assert factual allegations, "the veracity of which could plausibly support a Monell claim." Id. at 403. This additional support may include "reported and unreported cases," "successful motions," or a "volume of cases" involving "similar violations" by a municipality. Id. (quoting Haley, 657 F.3d at 53). Such support may not include, however, facts that allege nothing "more than a municipality's adherence to an impermissible custom." Id. at 403.

Plaintiff's supporting facts reveal that CR called HCSO and an officer from HCSO arrived at the scene. No independent facts outside of the event in controversy support or "buttress" Plaintiff's "legal conclusion." See id. Instead, Plaintiff's non-conclusory facts alleging an express policy are limited to

- 13 -

the facts arising from the disputed vehicle repossession. As such, the allegation that the officer arrived pursuant to a known policy is a legal conclusion appended to an incontrovertible fact. Even assuming that Plaintiff was able to plead supporting facts beyond the event in controversy, Plaintiff has failed to articulate that HCSO consistently followed this practice and that a policymaker both recognized and approved that practice. Therefore, this court finds that Plaintiff has failed to establish the first recognized claim based on an express policy.

## B. **Final Policymaking Authority**

Next, Plaintiff contends that "[a]t all relevant times, Coats was a final policy maker with respect to HCSO's law enforcement activities." (Compl. (Doc. 1) ¶ 186.) Plaintiff explains that "[u]pon information and belief," Godfrey's actions "were pursuant to the following customs, policies, practices, and/or procedures of HCSO, which Coats created, promulgated, and/or maintained, and/or which he directed, encouraged, allowed, and/or ratified . . . as policy for HCSO." (Id. ¶ 189.) Defendants argue that municipal liability requires both "specific policies and/or practices, and allege a direct causal link between such practices and the underlying conduct." (Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 19) at 16.)

- 14 -

This second theory contains two elements: first, the individual must be a person with final policymaking authority, Misjuns, 139 F.4th at 385; second, the person with such authority must make a decision, Starbuck, 28 F.4th at 535–36. Under the first element, Plaintiff has failed to plead facts sufficient to infer final policymaking authority. The Fourth Circuit identified a "marked difference" between "the authority to make final policy," which "give[s] rise to municipal liability based on an exercise of that discretion," and merely "the authority to make final implementing decisions." Misjuns, 139 F.4th at 385 (first quoting Hunter v. Town of Mocksville, N.C., 897 F.3d 538, 555 (4th Cir. 2018); then quoting Pembaur, 475 U.S. at 482). Determining final policymaking authority is context specific. Where a "County Sheriff" can fire employees, that Sheriff may not be "the county official responsible for establishing county employment policy." Id. (quoting Pembaur, 475 U.S. at 483 n.12). In other words, the ability to enforce policies does not necessarily establish the authority to create policies.

The facts here, taken as true, do not establish that Coats has final policymaking authority. While Coats as Sheriff certainly retains vested authority, Plaintiff has failed to articulate the scope and extent of that authority. Plaintiff has

- 15 -

not explained how HCSO policy is created and enforced. Plaintiff has also failed to identify which decisionmakers are responsible for designing HCSO policy. Finally, Plaintiff has not established whether the alleged policy was created by HSCO or another municipal body responsible for administering training and educational standards for law enforcement. See N.C. Gen. Stat. § 17(E) et seq. While Plaintiff has stated that "Coats created, promulgated, and/or maintained" the "customs, policies, practices, and/or procedures of HCSO," (Compl. (Doc. 1) ¶ 189), the Fourth Circuit has recognized that "merely stating the legal conclusion that [an official] had final policymaking authority does not make it so." Misjuns, 138 F.4th at 385.

Next, even assuming that Coats is a final policymaking authority, Plaintiff has failed to establish that Coats made a decision that constituted "the moving force behind the asserted constitutional violation." Starbuck, 28 F.4th at 535. In Starbuck, the Fourth Circuit explained that either ratification or independent action by a School Board could constitute a decision "sufficient to hold the School Board liable." Id. While "initial involvement" is not required to hold officials liable," id., the Fourth Circuit maintained that the Board's upholding a student's suspension was a decision that constituted a "moving

- 16 -

force" because the suspension "remain[s] on his permanent record." Id.

In this case, Plaintiff has failed to identify a specific action, at any stage of the alleged constitutional violation, that constitutes a decision by Coats. Plaintiff has not established that Coats ratified Godfrey's conduct, directed Godfrey's actions, or was ever made aware of the repossession in controversy. Accordingly, Plaintiff has failed to create the plausible inference that Coats made a decision as a person with final policymaking authority.

## C. **Omission and Failure to Train**

Plaintiff further argues that "Coats failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline officers of the HCSO, including Godfrey, with deliberate indifference to Ms. Atkinson's Constitutional rights." (Compl. (Doc. 1) ¶ 190.) Specifically, Plaintiff contends that HCSO failed to train on "self-help repossessions" or "civil standby." (Id. ¶¶ 86-87.) Defendants contend that "[i]n light of the Fourth Circuit's holding," Plaintiff has not alleged facts sufficient to meet the deliberate indifference standard because "there were no ascertainable standards which would have guided the HCSO on how to train officers, or how to enact policies in the context of

repossessions. Sheriff Coats was simply not on notice of any potential constitutional violation." (Defs.' Resp. to Text Order 1 (Doc. 55) at 9.)

The Fourth Circuit explained that in this case, the "constitutional terrain" was "murky." Atkinson, 100 F.4th at 509. In other words, "the law" did not "fairly warn[]" Godfrey "that his conduct violated the Constitution." Id. at 508. While this court recognizes that the second prong of qualified immunity and Monell liability are distinct standards, this court is also mindful that both standards require a similar examination of government officials' interaction with individuals' constitutional rights. Under the second prong of qualified immunity, courts must consider whether "existing precedent 'must have placed the statutory or constitutional question beyond debate.'" Atkinson, 100 F.4th at 505. Under the deliberate indifference standard for the third theory of municipal liability, courts must analyze whether a municipality failed "to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987). Just as qualified immunity requires courts to examine whether law enforcement had "fair warning" that the "conduct was unconstitutional," Atkinson, 100 F.4th at 506 (quoting Booker v. S.C. Dep't of Corr., 855 F.3d

- 18 -

533, 538 (4th Cir. 2017)), deliberate indifference requires courts to determine "that a municipality either knew or should have known about the deficiency, so it could remedy that deficiency." Est. of Jones, 961 F.3d at 672. While not congruent, the factual analysis and legal application in both require consideration of notice of a duty or obligation.

This court agrees with Defendants that the Fourth Circuit's order clarifies the failure to train analysis. The "core" of Monell liability for omissions is "some level of notice." Est. of Jones, 961 F.3d at 672. That level of notice need not rise to the level of a clear constitutional violation, but it does require some form of "deficiency" such that HCSO would have "notice of the need to better train its officers." Id. As the Fourth Circuit established, courts "are not consistent at all about when an officer's conduct constitutes assistance in the repossession as opposed to peacekeeping." Atkinson, 100 F.4th at 508. Because "there is no consensus on where to draw that line," id., there is no "risk of likely constitutional violations" and therefore no "deficiency." Est. of Jones, 961 F.3d at 672. Without such deficiency, Plaintiff cannot meet the deliberate indifference standard.

Plaintiff's claim that HCSO "has a history of failing to train its officers" is not limited to the events in controversy.

(Compl. (Doc. 1) ¶ 110). Instead, Plaintiff provided a report

that HCSO "unlawfully continued evicting individuals" during an

eviction moratorium. (Id. ¶ 111.) Additionally, Plaintiff argues

that HCSO "has a history of entering private property and

forcing individuals to do things against their rights—i.e.,

unlawful seizures" and cites Livingston v. Kehagias, 803 F.

App'x 673 (4th Cir. 2020). (Compl. (Doc. 1) ¶ 109.)

This court finds that the subject matter of Plaintiff's

referred material is too abstracted from the alleged injuries to

establish that HCSO was on notice of the exigent need for

training on vehicle repossession disputes. Each claim in

Livingston examined law enforcement's use of force during a

seizure or arrest upon arriving at an individual's home. 803 F.

App'x at 679, 686, 688. The eviction moratorium "ordered that

eviction and foreclosure hearings be postponed 30 days." (Compl.

(Doc. 1) ¶ 111.) While both instances may support the need for

some form of further training on arrest procedure or landlord-

tenant law, neither "have put [HCSO] on earlier notice of the

need to better train its officers" on automobile repossession

disputes. Est. of Jones, 961 F.3d at 672. As the Fourth Circuit

identified, evictions are factually "very different" than

automobile repossessions, and not all seizures of property are

analogous. Atkinson, 100 F.4th at 507 (recognizing that "Fuentes

- 20 -

does not even involve the same alleged unlawful seizure that we consider here") (citing <u>Fuentes v. Shevin</u>, 407 U.S. 67, 90-92 (1972)). Therefore, there was no "deliberate or conscious choice" by HCSO to fail to train its officers, <u>see</u> <u>id.</u> (quoting <u>Broderick</u>, 225 F.3d at 456), and this court finds that Plaintiff has failed to state a claim under the third theory of <u>Monell</u> liability.

### D. <u>Custom</u>

Finally, Plaintiff argues that "[u]pon information and belief, based upon the similar incidents described above and CR's communications with HCSO, the HCSO maintains a policy or custom of intervening in and assisting in contested repossessions despite obvious breaches of the peace." (Compl. (Doc. 1) ¶ 184.) Additionally, "[u]pon information and belief, it is custom for HSCO [sic] to assist secured parties with the self-help repossession of collateral." (<u>Id.</u> ¶ 84.) Defendants contend that "Plaintiff has not plausibly alleged that the Harnett County Sheriff's policies or customs caused any constitutional violation," nor has Plaintiff alleged that "HCSO could have acted deliberately via its policies, training, or practices in the chaotic repossession context." (Defs.' Resp. to Text Order 1 (Doc. 55) at 12.)

The Fourth Circuit has recognized that "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Lytle, 326 F.3d at 473 (quoting Carter, 164 F.3d at 220). Instead, "there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." Id. (quoting Kopf v. Wing, 942 F.2d 265, 269 (4th Cir. 1991)). Moreover, municipal liability under this fourth theory requires more than mere knowledge or "aware[ness] of that custom." Howard, 68 F.4th at 954. Rather, the municipality "must have knowledge of the unconstitutional behavior, not simply" the municipality's general practices. Id.

This court finds that Plaintiff has failed to create the plausible inference that a custom existed. First, the facts, taken as true, do not suggest that a practice existed that was "so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" Lytle, 326 F.3d at 471 (quoting Carter, 164 F.3d at 217). As the Fourth Circuit recently explained in Misjuns, "a 'custom cannot be established "by proof alone of the single violation charged.'" 139 F.4th at 386 (quoting Greensboro Pro. Fire Fighters Ass'n, Loc. 3157 v. City of Greensboro, 64 F.3d 962, 966 (4th Cir. 1995)). Just as in

- 22 -

Misjuns, where "[t]he only facts that [plaintiff] alleged . . .
regard[ed] his own termination," id. at 381, Plaintiff's custom
claim is limited to the repossession in controversy. Plaintiff
has failed to articulate any facts independent of her
interaction with CR that would suggest that HCSO intervened in
the disputed repossession as part of a custom or widespread
practice. In other words, Plaintiff "has alleged none other than
[her] own experience." Id. Thus, because of the Fourth Circuit's
recent opinion, this court finds that Plaintiff has failed to
establish "'numerous particular instances' of unconstitutional
conduct." Id. (quoting Kopf, 942 F.2d at 269).

Second, had Plaintiff asserted "numerous particular
instances," Kopf, 942 F.2d at 269, the custom claim would remain
insufficiently plead because Plaintiff cannot establish that
HCSO "had knowledge of the unconstitutional behavior." Howard,
68 F.4th at 934. Under this fourth theory, Plaintiff must plead
that a custom or widespread practice existed. Then, the facts
must establish that the municipality was aware of that practice.
Finally, the municipality must be aware of the unconstitutional
behavior arising during that practice, not simply the general
practice. Knowledge of general practices such as "secrecy
regarding confidential informants" do not alone implicate Monell
liability. Id. While HCSO may have had a practice of responding

- 23 -

to a tow company's calls during vehicle repossessions, Plaintiff
is unable plead facts supporting a plausible finding that Coats
had knowledge of any unconstitutional behavior, particularly in
light of the Fourth Circuit's opinion which held that there was
no "fair warning that conduct like Godfrey's was
unconstitutional." Atkinson, F.4th at 508. Thus, this court
finds that Plaintiff has failed to plead facts sufficient to
infer the existence of a custom. Plaintiff has therefore failed
to state a municipal liability claim upon which relief may be
granted.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that this court's prior order, (Doc.
45), dismissing Defendants' Motion to Dismiss, (Doc. 18), is
**VACATED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss the
complaint against Sheriff Wayne Coats, (Doc. 18), is **GRANTED.**
Because all claims as to Defendant Godfrey have also been
dismissed, (Text Order 07/26/2024), this action is hereby
**DISMISSED.**

A Judgment dismissing this action will be filed
contemporaneously herewith.

This the 23rd day of September, 2025.

_____
United States District Judge